IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**NOVA S.,**

      **Plaintiff,**

v.                                                            Case No.: 2:24-cv-00066

**MARTIN J. O'MALLEY,**
**Commissioner of the**
**Social Security Administration,**

      **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross motions for judgment on the pleadings as articulated in their briefs. (ECF Nos. 4, 5).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned respectfully **RECOMMENDS** that Plaintiff's request for judgment on the pleadings be **DENIED**; the Commissioner's request for judgment on the pleadings be **GRANTED**; the Commissioner's decision be

**AFFIRMED**; and this case be **DISMISSED** and removed from the docket of the Court.

## I. Procedural History

On April 23, 2021, Plaintiff Nova S. ("Claimant") protectively filed for DIB, alleging a disability onset date of April 21, 2021 due to "neuropathy caused by chemo, breast cancer survivor, joint and muscle pain, torn meniscus – right knee, anxiety, and depression." (Tr. at 173, 200). After the Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration, Claimant filed a request for an administrative hearing, which was held on May 23, 2023, before the Honorable M. Drew Crislip, Administrative Law Judge (the "ALJ"). (Tr. at 30-63). By written decision dated July 3, 2023, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 11-29). The ALJ's decision became the final decision of the Commissioner on December 18, 2023, when the Appeals Council denied Claimant's request for review. (Tr. 1-6).

Claimant timely filed the present civil action, seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 3). Claimant filed a Brief seeking judgment on the pleadings, (ECF No. 4), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 5), to which Claimant filed a reply, (ECF No. 6). Consequently, the matter is fully briefed and ready for resolution.

## II. Claimant's Background

Claimant was 51 years old on her alleged disability onset date and 54 years old on the date of the ALJ's decision. She completed one year of college, communicates in English, and previously worked as an administrative assistant, 911 dispatcher, emergency room technician, pharmacy technician, and nursing assistant. (Tr. at 199, 201-02).

### III. Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"), found at 20 C.F.R § Pt. 404, Subpt. P, App. 1. *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case

of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents such findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is

4

deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a mental disorder described in the Listing. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status for DIB through December 31, 2026. (Tr. at 16, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since April 1, 2022, the alleged disability onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: history of breast cancer with residuals of treatment, including peripheral neuropathy; carpal tunnel syndrome (CTS); chronic obstructive pulmonary disease (COPD); and obesity. (Tr. at 17, Finding No. 3). The ALJ also considered Claimant's right knee osteoarthritis, anxiety disorder, and depressive disorder, but the ALJ found that the impairments were non-severe. (Tr. at 17-19).

Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments

5

contained in the Listing. (Tr. at 23, Finding No. 4). Thus, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to lift, carry, push, and pull 10 pounds occasionally and less than 10 pounds frequently. She can sit for 6 hours in an 8-hour day, and can stand and/or walk for 2 hours in an 8-hour day. She can occasionally operate hand and foot controls. She can occasionally reach overhead. She can frequently reach in other directions, handle, finger, and feel. She can occasionally climb ramps and stairs, balance (navigate on uneven or slippery terrain), stoop, and kneel. She can never crouch, crawl, or climb ladders, ropes, or scaffolds. She should have no exposure to unprotected heights, be in proximity to moving mechanical parts of dangerous machinery, extreme temperatures, and vibration. She can have occasional exposure to weather, humidity and wetness, and pulmonary irritants. She can occasionally operate a motor vehicle. In addition to normal breaks, she would be off task 5 percent of the time in an 8-hour day.

(Tr. at 19-23, Finding No. 5).

At the fourth step, the ALJ concluded that Claimant could perform her past relevant work as a dispatcher. (Tr. at 23, Finding No. 6). Consequently, the ALJ decided that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (*Id.*, Finding No. 7).

## IV. Claimant's Challenge to the Commissioner's Decision

Claimant asserts that the ALJ's step four finding that she can perform her past semiskilled job as a 911 dispatcher is contrary to law because the ALJ did not include mental limitations in the RFC finding or explain why such limitations were excluded. (ECF No. 4). The Commissioner responds that the ALJ's discussion of the evidence, particularly the medical expert's opinion expressed during the administrative hearing, illustrates that Claimant's mild limitations were appropriately accounted for in the RFC finding given the absence of any functional impact. (ECF No. 5). In reply, Claimant disputes that the ALJ's discussion of the medical expert's opinion or other evidence was sufficient to explain the RFC finding. (ECF No. 6).

## V. **Relevant Evidence**

The undersigned thoroughly examined the entire record. The evidence that is most pertinent to Claimant's challenge is summarized below.

### *A. Treatment Records*

Claimant's primary care provider prescribed Claimant medication for anxiety. (Tr. at 702, 727, 799, 819, 840, 867). Claimant reported mental symptoms to her provider, at times, but her recorded psychiatric findings were overwhelmingly normal. For instance, on March and April 19, 2021, shortly before her alleged onset of disability, Claimant's mood was neutral and her affect was appropriate. (Tr. at 740, 743). Claimant complained of excessive stress, mood changes, and nervousness during her next monthly appointment in May, (Tr. at 736), but she denied depression or excessive stress in June, (Tr. at 733). In July 2021, although Claimant complained of depression, excessive stress, and mood changes, her mood was neutral, and her affect was appropriate (Tr. at 729, 866). In August 2021, Claimant denied depression or excessive stress, and her mood was neutral with appropriate affect. (Tr. at 722, 723). Claimant reported excessive stress, but she denied depression in September 2021. (Tr. at 719). In November 2021, Claimant complained of excessive stress and nervousness, but psychiatric findings were not noted. (Tr. at 712). On January 31, 2022, Claimant denied anxiety or depression. (Tr. at 926). Her mood, memory, affect, and judgment were all normal at that time. (Tr. at 927). She denied depression or excessive stress in June, July, October, and November 2022. (Tr. at 884, 897, 904, 911). Finally, Claimant reported depression, excessive stress, mood changes, and nervousness in December 2022. (Tr. at 887).

7

### B. Evaluations, Opinions, and Prior Administrative Findings

On March 26, 2018, consultative psychologist Larry J. Legg, M.A., performed a clinical interview and mental status examination of Claimant. Claimant related that she suffered from depression since she was a teenager, but she was not treated for the condition until several years ago when her primary care physician prescribed medication. (Tr. at 286). Her mental status examination findings were entirely within normal limits, including her appearance, attitude/behavior, speech, orientation, mood, affect, thought process, thought content, perception, insight, psychomotor behavior, judgment, suicidal/homicidal ideation, memory, concentration, persistence, and pace. (Tr. at 287). Claimant exhibited normal social functioning during the examination, and she reported that she got along well with her husband, children, and coworker. (*Id.*). She had a few friends, attended church occasionally, and left home three to four times per week to go to work or attend medical appointments. (*Id.*). Mr. Legg diagnosed Claimant with major depressive disorder and generalized anxiety disorder. (Tr. at 288).

On September 7, 2021, psychiatrist James Binder, M.D., concluded based upon his review of the record that Claimant had mild limitations in all of the paragraph B criteria, and her mental impairment was non-severe. (Tr. at 73). At the reconsideration level of review, on May 25, 2022, psychiatrist Narendra Parikshak, M.D., asserted that Claimant did not submit all of the required paperwork in support of her claim. (Tr. at 82). Dr. Parikshak concluded that she was unable to assess Claimant's functional limitations with the evidence in the file. (Tr. at 82).

### C. Administrative Hearing

During her administrative hearing in May 2023, Claimant testified that she still worked a light duty job, including stocking and cleaning. (Tr. at 36-37). She generally

worked four to five hours per week as tolerated, but she did not work some weeks. (Tr. at 36). Claimant stated that she had difficulty concentrating and focusing due to pain. (Tr. at 50). She took Gabapentin, which caused brain fog and problems speaking. (Tr. at 50-51).

Psychologist Gary Bennett, Ph.D., testified that he reviewed the record and did not "see anything more than a mild limitation in any of the B criteria." (Tr. at 37-38). The ALJ responded on the record as follows:

> Okay. All right. So, depression and anxiety established the chronic mental health medically determinable impairments but no more than mild restriction in any of the B criteria so no work related deficit based on psychological profile [...]

(Tr. at 38).

## VI. <u>Scope of Review</u>

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In *Blalock v. Richardson*, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589

9

(4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his or her decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

### VII. <u>Discussion</u>

Claimant contends that the ALJ's step 4 finding that she can perform her past semiskilled job as a 911 dispatcher is contrary to law because the ALJ did not include mental limitations in the RFC finding or explain why such limitations were excluded. (ECF No. 4). SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the ***most*** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id.*

According to SSR 96-8p, the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision,

coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR § 404.1545(b)-(d).

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4.

In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7. While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

As discussed, the ALJ applies a special technique to evaluate mental impairments, which includes rating the severity of functional limitations in the "paragraph B" categories

of (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself. The ALJ uses a five-point scale, ranging from no, mild, moderate, marked, and extreme limitations. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F(2)(a)-(e). As relevant here, a finding of "no limitation" reflects that the claimant is able to function in that category area "independently, appropriately, effectively, and on a sustained basis" whereas a finding of "mild limitation" means that the claimant's ability to do so is "slightly limited." *Id.* at § 12.00F(2)(a), (b).

In this instance, the ALJ applied the special technique to consider Claimant's mental functional limitations at step two of the sequential evaluation. In the category of understanding, remembering or applying information, the ALJ noted that Claimant reported needing reminders to take her medication, but she did not require special reminders to take care of her personal needs and grooming; she was good at following written and spoken instructions; her immediate memory, recent memory, and remote memory were all within normal limits during her consultative examination; and her memory was baseline when evaluated in June 2022. (Tr. at 17-18).

The next functional area is interacting with others. The ALJ cited Claimant's statements that she talked to her children and grandchildren in person, over the phone, and by video chat; did not have any problems getting along with family, friends, or others, although she did not go anywhere on a regular basis except medical appointments; and her social functioning was within normal limits during her consultative examination. (Tr. at 18). In the third functional area of concentrating, persisting or maintaining pace, the ALJ noted that Claimant reported being able to pay attention in 20-minute increments, but she does not finish what she starts. (*Id.*). During her consultative examination,

12

Claimant's concentration, persistence, and pace were all within normal limits. (*Id.*). Finally, in the fourth functional area of adapting or managing oneself, Claimant indicated that she mostly lies on the couch, but she tries to clean one room per day and cook small meals. (*Id.*). She also cares for her personal hygiene daily. (*Id.*). During her consultative examination, Claimant confirmed that she spends her days completing minimal household chores with frequent breaks, and she spends most of her time at home. (*Id.*).

Based on the aforementioned, as well as the record as a whole, the ALJ found that Claimant is mildly impaired in all four broad functional categories. (*Id.*). The ALJ explained:

> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere (20 CFR 404.1520a(d)(1)).
>
> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

(*Id.*).

In the RFC analysis, the ALJ noted that Claimant alleged that she could not work, in part, due to anxiety and depression. (Tr. at 20). However, the ALJ found that Claimant could perform a range of sedentary work. The RFC analysis primarily focused on Claimant's physical symptoms, but the ALJ considered the prior administrative findings, as well as Dr. Bennett's opinion, concerning Claimant's mental impairments, stating:

> I find that Dr. Bennett's opinion that the claimant has only mild restrictions in the "B" criteria with no severe mental health impairments is persuasive, as he is the only mental health professional to have had opportunity to

13

> review the entire pertinent record. In addition, his was consistent with the consultative examination report by Mr. Legg in Exhibit B7F.
>
> [...]
>
> I find that the State agency consultants' mental health assessments in Exhibits B3A and B5A by James Binder, M.D. and Rosemary Smith Psy.D. are not persuasive in that they are both internally inconsistent. Dr. Binder found that the claimant had severe depressive disorder. However, he only found mild restrictions in all four areas of the "B" criteria. In addition, Dr. Smith found depressive disorder and anxiety disorder to be severe impairments, but found insufficient evidence of assess functional limitations.
>
> In sum, the claimant's residual functional capacity as determined in this decision is fully supported when considering the claimant's testimony and written statements in conjunction with the clinical facts, medical findings and opinions of the treating, examining and non-examining physicians.

(Tr. at 22-23).

Based on those statements, it is clear that the ALJ found that Claimant's mild paragraph B mental limitations did not result in any RFC restrictions. If there was any doubt from the decision itself, the ALJ also stated explicitly during the administrative hearing that he found that there were no work-related deficits based on the psychological profile. (Tr. at 38). Thus, despite the brevity of the mental RFC analysis, the Court can meaningfully review his findings.

The ALJ provided a logical bridge from the evidence to his conclusion that no mental RFC restrictions were warranted. He stated that Claimant's impairments did not cause more than minimal limitation in her ability to perform basic work activities, and he was persuaded by Dr. Bennett's opinion that Claimant's mental impairments were non-severe. While the step two severity finding is not a substitute for the RFC analysis, it provided the necessary insight, along with the ALJ's evaluation of Dr. Bennett's opinion and the other evidence, to allow for meaningful review. *See, e.g., Lisa T. v. O'Malley*, No.

2:23-CV-00791, 2024 WL 2235629, at *9 (S.D.W. Va. Apr. 10, 2024), *report and recommendation adopted*, 2024 WL 2224379 (S.D.W. Va. May 16, 2024); *Kimberly B. C. v. Kijakazi*, No. 1:22CV617, 2023 WL 4974033, at *7-8 (M.D.N.C. Aug. 3, 2023).

It should be noted that the ALJ's RFC discussion of Claimant's mental impairments, although it is not expansive, reflects the minimal mental health information in the record. Claimant primarily complained of physical symptoms and limitations during the relevant period. She received some treatment, consisting of medication, from her primary care provider for depression and anxiety. She alleged mental symptoms, at times, (Tr. at 712, 719, 729, 736, 887), but her recorded psychiatric findings were overwhelmingly normal and she often denied psychological symptoms, (Tr. at 712, 719, 722, 723, 733, 740, 743, 866, 884, 897, 904, 911, 926, 927). There are no significant subjective complaints, mental source statements, prior administrative findings, or other critical conflicting evidence that the ALJ failed to consider. The ALJ evaluated the available evidence and determined that Claimant's mild functional limitations did not restrict her RFC, and that finding is supported by substantial evidence.

This matter is distinguishable from recent cases in which this Court found that the ALJ's lack of explanation precluded meaningful review. The Court remanded several cases in which the ALJs did not discuss the claimants' mental impairments or mental functional limitations at all after step two of the sequential evaluation. *Dolly H. v. Kijakazi*, No. 2:22-CV-00573, 2023 WL 6566603, at *7 (S.D.W. Va. Aug. 31, 2023), *report and recommendation adopted,* No. 2:22-CV-00573, 2023 WL 6174413 (S.D.W. Va. Sept. 22, 2023); *Mary S. v. Kijakazi*, No. 2:23-CV-00302, 2023 WL 9007315, at *7 (S.D.W. Va. Aug. 24, 2023), *report and recommendation adopted,* No. 2:23-CV-00302, 2023 WL 9004929 (S.D.W. Va. Dec. 28, 2023); *Jones v. Kijakazi*, No. 5:21-cv-00634 (S.D.W. Va.

Sept. 22, 2022), at ECF No. 18, *report and recommendation adopted, Jones v. Kijakazi*, No. 5:21-cv-00634 (S.D.W. Va. Nov. 28, 2022), at ECF No. 19; *Shank v. Saul*, No. 3:20-CV-00444, 2021 WL 2767063, at *8 (S.D.W. Va. June 11, 2021), *report and recommendation adopted,* No. CV 3:20-0444, 2021 WL 2744550 (S.D.W. Va. July 1, 2021). Unlike this matter, the ALJs in the preceding cases did not express that a medical opinion informed the RFC analysis. (*Id.*). In some of the cases, the ALJs found that the claimants were even more limited than the state agency experts assessed, yet the ALJs did not proceed to explain why those limitations did not translate into any RFC restrictions. *See, e.g., Dolly H.*, 2023 WL 6566603, at *7; *Mary S.*, 2023 WL 9007315, at *7.

Reading the ALJ's opinion as a whole, the ALJ sufficiently explained why he concluded that Claimant had mild limitations in the paragraph B criteria, but he did not assess RFC restrictions. The ALJ stated that the record documented that Claimant was good at following instructions; cared for her personal needs; did not have any problem getting along with others; completed some minimal household chores; and her memory, concentration, persistence, and pace were within normal limits. Although the ALJ could have more robustly articulated his mental RFC findings, the deficiency is harmless in this case because his reasoning is still quite apparent from the decision and is supported by substantial evidence. It should be noted that the SSA ordered a consultative mental status examination during which Claimant demonstrated **zero** abnormalities. The ALJ also called a medical expert to testify at the administrative hearing regarding Claimant's mental impairments. Dr. Bennett confirmed that he reviewed the record and Claimant had, at most, mild paragraph B limitations. Taking that information into account, the ALJ found that no mental RFC restrictions were warranted. Indeed, no expert has opined in this matter that Claimant had any mental RFC limitations.

Claimant repeatedly argues that the ALJ erred in comparing her RFC to only the *physical* demands of her past work as step four. (ECF Nos. 4 at 11, 6 at 5). However, the ALJ considered Claimant's non-severe mental impairments in formulating the RFC and found that Claimant did not have any work-related restrictions. For the reasons stated above, this finding is supported by substantial evidence. *Blalock*, 483 F.2d at 776 (defining substantial evidence as "more than a mere scintilla of evidence but may be somewhat less than a preponderance"). The ALJ compared that RFC to the physical requirements of Claimant's past work because there were no mental RFC restrictions to compare with the demands of Claimant's past job.

For the above reasons, the undersigned **FINDS** that the ALJ's RFC analysis allows for meaningful review, and his step four finding is supported by substantial evidence.

## VIII. Proposal and Recommendations

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **DENY** Plaintiff's request for judgment on the pleadings, (ECF No. 4); **GRANT** Defendant's request to affirm the decision of the Commissioner, (ECF No. 5); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the

Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Goodwin, and Magistrate Judge Reeder.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** November 12, 2024

Joseph K. Reeder
United States Magistrate Judge

18